UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| A TRAVELER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:06-CV-56-TS |
| ) | |
| CSX TRANSPORTATION, INC., ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The Plaintiff, A Traveler, sued his employer, CSX Transportation, Inc., (CSXT), asserting that its decision to remove him from his railroad conductor and engineer trainee duties violated the American with Disabilities Act (ADA). The Defendant has moved for summary judgment and the matter is ripe for ruling.

**BACKGROUND**

On February 28, 2006, the Plaintiff filed a pro se Employment Discrimination Complaint against CSXT asserting violations of the ADA. The Plaintiff alleges that he was "medically removed from service based on hearsay which was medically unfounded." (DE 1 at 2.) He complains that he was never diagnosed by the Defendant's medical department or any doctor affiliated with the Defendant "for being mentally unstable or delusional." (DE 1 at 4.)

On April 3, 2006, CSXT answered the Complaint and on February 15, 2007, CSXT moved for summary judgment on the Plaintiff's claims. CSXT argues that the Plaintiff's removal from service does not constitute disability discrimination under the ADA because the Plaintiff does not have a disability as defined under the ADA and the fitness for duty examination

required by CSXT was job-related and consistent with business necessity.

On February 26, the Plaintiff filed his own motion for summary judgment, which he later clarified was a response to the Defendant's motions and meant to show the Court why the matter should not be summarily decided. Accordingly, the Court converted the motion to a response. On April 9, the Plaintiff filed a supplemental document which the Court construes as a supplemental response in opposition to the Defendant's Motion for Summary Judgment.

On March 15, 2007, the Defendant replied.[1]

**STANDARD OF REVIEW**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50 (1986); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). To determine whether any

---

[1] This is a simplified recitation of the docket, which actually contains 157 filings, many of them submitted by the Plaintiff and stricken pursuant to Court order.

genuine issue of fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c), Advisory Committee Notes, 1963 Amendments. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323. In response, the nonmoving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000).

A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598–99. Although a bare contention that an issue of fact exists is not sufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000). The court must consider the evidence as a jury might, "construing the record in the light most favorable to the nonmovant and avoiding the temptation to decide which party's version of the facts is more likely true." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

Local Rule 56.1(a) requires that the party opposing summary judgment shall include a "'Statement of Genuine Issues' setting forth . . . all material facts as to which it is contending there exists a genuine issue necessary to be litigated."

> In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are

3

> admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file.

N.D. Ind. L.R. 56.1(b).

## STATEMENT OF MATERIAL FACTS

CSXT operates a 21,000-mile railroad system in the United States and in the Canadian provinces of Ontario and Quebec. Its trains haul cargo and freight, including hazardous materials, across the country to various destinations. The trains may be up to one mile long and weigh up to 14,000 tons. They reach speeds of 60 miles per hour.

The Plaintiff began working for CSXT in July 2000 as a conductor. In this position, he was responsible for sitting behind the engineer who was operating the train. A conductor also controls switches, monitors the train's air pressure, tells the engineer the train's distance from various objects, and communicates the railroad signals to other crew members. From the Plaintiff's home terminal in Garrett, Indiana, he would accompany train on runs to other cities in Illinois, Ohio, and Kentucky.

In early 2005, the Plaintiff began to contact CSXT's Employee Assistance Program (EAP), which assists employees who are experiencing psychological issues in their work or personal lives. He called the EAP to talk about his belief that other employees and his union were engaged in a conspiracy against him.

In June 2005, the Plaintiff began training to become a locomotive engineer. Under the collective bargaining agreement in place, all employees who were hired after a certain date were required to attend engineering training when notified of the requirement to do so. Once the

4

trainee successfully completed the locomotive engineer training program, he could be called to work as a locomotive engineer. If an engineer was furloughed or had insufficient seniority to hold a locomotive engineer position, he was required to work as a conductor.

A locomotive engineer operates the train's engine and ensures the safe and efficient movement of trains. An engineer is required to be alert and attentive and to maintain control of the engine.

In July 2005, the Plaintiff's contact with the EAP hot line became more frequent as he complained about the perceived conspiracy. Tom Leathers, the EAP Manager for the Plaintiff's geographic area, fielded these calls. During this time, the Plaintiff left four voicemail messages for Leathers regarding the conspiracy. He also sent Leathers 200 pages of documents that he said were proof of the conspiracy against him. In these documents, he stated that at one point, he believed that CSXT's automated, computerized scheduling system for conductors and engineers was angry at him. (DE 117-5 at 3) ("Near the end, I actually believed, INFO BOT, was angry at me."). The Plaintiff left the fourth of his voice messages for Leathers on or about July 18, 2005:

> Tom, A Traveller. If you heard the expression either you're pregnant or not either I'm crazy or I'm not. Either there is a conspiracy or there's not. If there is then I'm asking for your assistance in bringing it out to the company and to what ever we have to do to get the union to investigate their own because they seem to be refusing. If there is no conspiracy and everything was done according to the book, and all t's crossed and dots doted [sic], then I guess I need mental help because its starting to take its effect at home. I'm fighting more and more with Mary, I'm going out less and less. I've just been home 48 hours and, um, it its like no one wants to acknowledge that there is a problem and if no one want to acknowledge then its either me or its something no one wants to get involved in because its that ugly and dirty which in turn your fresh eyes you are there to help me, you're there to work for the company. We do have a problem, need to get it fixed, either I'm screwed in the head or straight. All I can say is putting you on the line asking for help over the phone. Need be when I get home from Columbus, I'm going to type out a letter and request your help in this matter. If you get the time, call Mary 260-927-9737. She needs oral help, I've been all over her because of this shit, its

5

terrible. Thanks Tom, have a nice day.

(Ex. A to Leather Aff.)

After hearing this voicemail, Leathers became concerns that the Plaintiff was having difficulty distinguishing between reality and fiction. He expressed this concern to Beverly Jackson, who managed CSXT's nationwide EAP program. Leathers told Jackson that he was concerned whether the Plaintiff could safely perform the duties of the locomotive engineer and locomotive engineer training positions. Leathers believed that the Plaintiff's voicemails and the documents he submitted indicated that the Plaintiff might be mentally unstable and possibly a safety risk. Leathers sent Jackson copies of the documents the Plaintiff sent to him and transcripts of the voicemail messages.

In her position, Jackson regularly encountered situations where CSXT had to remove an employee from service for safety reasons until CSXT can examine and review the employee's medical or psychological condition and determine that the employee can safely perform the duties of his position. On July 22, 2005, Jackson attempted to contact the Plaintiff to assess his situation for herself. When she could not reach him, she medically removed him from service. When Jackson later spoke to the Plaintiff on that same day, he stated that he occasionally was uncertain whether persons or events were real. Believing that the conversation confirmed that the Plaintiff should be removed from service, Jackson left his status as medically unqualified pending CSXT's receipt and review of a valid fitness for duty examination. Jackson told the Plaintiff that he was being removed from service for safety reasons pending an evaluation of his psychological condition. She explained that CSXT needed medical information demonstrating that his psychological condition had been resolved and he could safely perform the specific

6

duties of his engineer position. Jackson offered to include a human resources representative in a three-way conversation, but the Plaintiff declined. On July 28, Jackson sent the Plaintiff a letter memorializing their conversation and repeating the steps he needed to take to return to service.

Jackson often consults with Dr. Thomas J. Neilson, CSXT's Chief Medical Officer, before she removes an employee from service. When Jackson spoke to Dr. Neilson about her safety concerns, he agreed with Jackson's decision to remove the Plaintiff from service.

When an employee is removed from service because a physical or psychological condition may render him unsafe to perform the duties of his position at CSXT, the length of the removal is determined by how long it take the employee to secure a valid fitness for duty certification from a medical provider that CSXT's medical department can then review. In the Plaintiff's circumstances, CSXT required clinical information from a Psychiatrist/Psychologist and results of Cognitive (Neuropsycholocial) testing to indicate the level of functioning. CSXT medical personnel would also need to discuss the evaluation with the psychologist or psychiatrist to assure them that the examiner understood the essential job functions of a locomotive engineer and the safety-sensitive nature of the job.

On August 12, and December 6, 2005, Jackson sent the Plaintiff letters reminding him of his status. She reiterated the reason for the removal:

> **Background:**
> - On July 22, 2005, you told me in a phone conversation that you were at times unable to determine what was real and what was in your imagination.
> - As a conductor or locomotive engineer, you are responsible for trains that may be up to a mile long, weigh up to 14,000 tones and travel at speeds up to 60 mph and which may carry materials that are hazardous to the public.
> - The inability of a conductor or locomotive engineer to clearly, consistently and accurately determine reality is a grave safety hazard. If you as either the conductor or locomotive engineer can not consistently

> determine what is real and what is not, you may not be able to determine the reality of what you hear (radio communications) or see (people or vehicles on the tracks).
> 
> **Reason for Removal from Service:**
> - You were removed from service for safety reasons pending an examination and review of your psychological condition.

(DE 117-5 at 11, 12/6/05 letter.) These letters also repeated the action necessary for the Plaintiff to return to service.

The Plaintiff submitted various documents that did not qualify as fitness reports. On February 2, 2006, Jackson sent the Plaintiff a letter explaining why the documentation he submitted did not qualify as valid fitness reports. The Plaintiff then submitted a March 2006 report from Dr. Gaylen Yordy, which was also insufficient to qualify as a fitness for duty exam because it did not include a cognitive functioning test or an examination by the psychiatrist. CSXT then scheduled the Plaintiff to undergo an examination by Dr. Stafford Henry, a forensic psychiatrist.

The Plaintiff visited Dr. Henry's office on May 31, 2006, but Dr. Henry was unable to complete the exam because he needed additional information from the Plaintiff and CSXT's medical department. Dr. Henry wrote to the Plaintiff and Jackson requesting the additional information. However, the Plaintiff revoked Dr. Henry's authority to communicate with Jackson. Dr. Henry wrote to the Plaintiff that his revocation, as well as his hostile manner toward him, prevented him from completing the fitness for duty exam. Dr. Henry also expressed in a letter to Dr. Neilson that he no longer felt comfortable having contact with the Plaintiff given his hostile and accusatory stance toward him and advised that he could not complete the evaluation.

The Plaintiff remains out of service pending receipt and review of a valid fitness for duty report. The Plaintiff does not believe that he is unable to perform the duties of his position. The

Plaintiff was asked during his deposition whether "any mental or psychological issues ever affected [his] ability to work? He responded, "No." (Pf. Dep. at 30.) The Plaintiff further testified, "As far as I am concerned, I am not delusional, and I would like my job back." (Pf. Dep. at 39.) When asked if, in his opinion, there was "ever a time where you couldn't do your job as an engineer trainee, because you couldn't distinguish what was real and what was fiction? Did that ever prevent you from doing your job?" his response was "Oh, no, never prevented me, because I was never delusional." (Pf. Dep. at 215–16.)

## DISCUSSION

"Title I of the ADA, 42 U.S.C. § 12111, is devoted to eliminating employment discrimination based on actual or perceived disabilities." *Karraker v. Rent-A-Center, Inc.*, 411 F.3d 831, 834 (7th Cir. 2005). The ADA prohibits employers from discriminating against "a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA also requires employers to make reasonable accommodations for the disabilities of qualified individuals. *id.* § 12112(b)(5)(A). The Plaintiff's claim is for disparate treatment only; he does not assert a failure-to-accommodate claim.

An ADA plaintiff claiming disparate treatment must show that he is protected by the ADA and that his employer violated the ADA by taking adverse action against him because of his disability. *Timmons v. Gen. Motors Corp.*, 469 F.3d 1122, 1127 (7th Cir. 2006). Once the plaintiff establishes that he is protected by the ADA, he may employ a direct or indirect method

of proving that he was treated adversely (discriminated against) under the ADA. *Id.* "Under the so-called 'direct' method, the plaintiff may show either direct or circumstantial evidence that points to a conclusion that the employer acted as it did for illegal reasons." *Timmons*, 469 F.3d at 1126. Using the indirect method, a plaintiff must first make out a prima facie case of discrimination.

> To make a prima facie case of disability discrimination at the summary judgment phase, a plaintiff must offer evidence that: 1) she is disabled within the meaning of the ADA, 2) she was meeting her employer's legitimate employment expectations, 3) she was subject to an adverse employment action, and 4) similarly situated employees received more favorable treatment.

*Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 ( 7th Cir. 2007). An alternative fourth prong requires the plaintiff to show circumstances that indicate that it is more likely than not that disability was the reason for the adverse action. *See, e.g., Timmons*, 469 F.3d at 1127–28; *Spath v. Hayes Wheels Int'l-Indiana, Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). If the plaintiff establishes all four elements of a prima facie case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action. *Timmons*, 469 F.3d at 1126, 1128. Once the employer does so, the plaintiff then has the burden to show that the employer's stated reason is not the real reason, but is a pretext for discrimination. *Id.*

### A.     Qualified Individual with a Disability

Under either method of proving discrimination, the employee must first establish that he was "a qualified individual with a disability." *Timmons*, 469 F.3d at 1127; *Cassimy v. Bd. of Educ. of Rockford Pub. Sch. Dist.*, 461 F.3d 932, 935–36 (7th Cir. 2006) (stating that if the

plaintiff was not disabled for purposes of the ADA, then "neither his discrimination claim nor his failure to accommodate claim can proceed, as this is the first element of both claims"); *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524–25 (7th Cir.1996) (no recovery under the ADA unless plaintiff establishes she is a qualified individual with a disability); *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (stating that "[t]he ADA proscribes discrimination against only 'qualified individual[s] with a disability'") (quoting 42 U.S.C. § 12112(a)). Simply put, if the employee cannot show that he is a qualified individual with a disability, "he is not covered by the ADA." *Timmons*, 469 F.3d at 1127.

Under the ADA, "disability" may be demonstrated by one of three methods: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individuals; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Although the Plaintiff does not explicitly state under which subsection he is disabled in his original response to CSXT's Motion for Summary Judgment, that response nevertheless reveals that he can only be proceeding under the theory that CSXT regarded him as having an impairment that substantially limited him in the major life activity of working. In his response, the Plaintiff does not dispute CSXT's statement that the Plaintiff's testified in his deposition that he did not have a mental condition that affected his ability to work and was not delusional. DE 115 at 4–5. Neither does the Plaintiff present any evidence that he actually suffered from a mental disorder or impairment. Rather, he concentrates on CSXT observations of the Plaintiff and what CSXT believed about his ability to perform his job. (DE 122-10 at 1–4.) The Plaintiff states that CSXT was concerned with his mental state and his ability to perform the duties of his

11

position safely and cites to portions of CSXT's brief in support of summary judgment as evidence of its concerns. He contends that CSXT's admissions establish that he was disabled within the meaning of the ADA.

After citing portions of CSXT's response to his EEOC Charge, he writes:

*Doubt* about Mr. Traveler's ability to discern between what was actual and real and what was not; being unsure sometimes whether events and persons were real with apparent delusion, confusion regarding reality and Mr. Traveler's ability to grasp both oral and written instructions are all mental impairments which substantially limits Mr. Traveler's major life activities.

(DE 122-10 at 2) (emphasis added). Upon citing portions of CSXT brief in support of its motion for summary judgment, the Plaintiff concludes:

CSXT admits that CSXT's "*observations*" of Mr. Traveler, showed that Traveler couldn't perform the duties of his safety-sensitive position because Mr. Traveler had an unacceptable mental state. CSXT *did believe* that Mr. Traveler was experiencing mental issues, including difficulty distinguishing between fiction and reality. That Mr. Traveler's mental state made him unable to safely perform his duties as an engineer or conductor. That Mr. Traveler did posed [sic] a significant public risk.

\* \* \*

Delusion and paranoia combined, *as CSXT stated*, are standards of a mental impairment that substantially limits one or more major life activities.

(DE 122-10 at 3–4) (emphasis added).

That he is proceeding under the "regarded as" prong of the definition of disability and not claiming that he is actually impaired is confirmed by his supplemental response (DE 131). There, he presents the statutory definition of disability with the regarded as prong in bold face type and states that you are disabled "if an employer believes that you have such a disability, even if you don't." (DE 131 at 5; *see also* DE 131 at 11 (arguing that there were no medical records to sustain the Defendant's belief that he was delusional "because Plaintiff isn't delusional").)

The Court will proceed under the assumption that the Plaintiff does not have a mental impairment that substantially limits his ability to perform one or more major life activities. Neither party argues that he is actually suffering from such an impairment and there is no evidence in the record of such an impairment. The Court will address the Plaintiff's claim that CSXT regarded him as having a substantially limiting impairment when it believed he could not safely perform the engineer job.

**B.     Regarded as Having a Substantially Limiting Impairment**

The ADA provides that having a disability includes "being regarded as having," "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," 42 U.S.C. §§ 12102(2)(A) & (C). The Supreme Court has said that there are two apparent ways in which individuals may fall within this definition:

> (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton*, 527 U.S. at 489. An employer regards an employee's condition as "substantially limiting" if he perceives the employee to be "significantly restricted as to the condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *Riemer v. Ill. Dep't of Transp.*, 148 F.3d 800, 806 (7th Cir.1998) (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). "If the condition that is the subject of the

employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *See Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005) (internal quotation marks and citation omitted). In other words, unless CSXT believed that the Plaintiff had an impairment that substantially limited his ability to perform the major life activity of working (the only activity he has identified), then CSXT's actions based on a belief as to his abilities do not violate the Act. *See Kupstas*, 398 F.3d at 612.

To establish that CSXT regarded him as having an impairment that substantially limited his ability to work, he must provide evidence that his employer believed he was substantially limited in employment generally, not simply that he was unable to perform a particular job for CSXT. *See Peters v. City of Mauston*, 311 F.3d 835, (7th Cir. 2002); *Sinkler v. Midwest Prop. Mgmt. Ltd. P'ship*, 209 F.3d 678, 685 (7th Cir. 2000); *Byrne v. Bd. of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992); *see also Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002) (stating that "the impairment must substantially limit employment generally") (quoting *Contreras v. Suncast Corp.*, 237 F.3d 756, 762 (7th Cir.2001)). An individual is substantially limited in working if he is significantly restricted in the ability to perform either an entire class of jobs or a broad range of jobs as compared to the average person having comparable training, skills, and abilities. *Sinkler* at 685; *see also Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1097 (7th Cir. 1998); 29 C.F.R. § 1630.2(j)(3)(i).

The Seventh Circuit has held:

> [E]xcept in "rare cases in which the [plaintiff's] impairments are so severe that [his] substantial foreclosure from the job market is obvious," he must present "some evidence of the number and types of other jobs" in the geographic region, from which he would be excluded because of his perceived impairments. *EEOC v.*

> *Rockwell Int'l Corp.*, 243 F.3d 1012, 1017–18 (7th Cir.2001). The impairments must "substantially limit employment generally," *Stein v. Ashcroft*, 284 F.3d 721, 725 (7th Cir. 2002), not merely preclude an employee from performing "either a particular specialized job or a narrow range of jobs." 29 C.F.R. Pt. 1630, App. § 1630.2(j). A plaintiff can never satisfy his burden by showing only that his employer believed that he could not perform a specific job. *Toyota*, 534 U.S. at 200, 122 S.Ct. 681; *Peters*, 311 F.3d at 843.

*Kupstas*, 398 F.3d at 613.

All the evidence before the Court indicates that CSXT believed that the Plaintiff was restricted in his ability to perform two related jobs—locomotive conductor and engineer. The evidence also establishes that it was the safety-sensitive nature of these positions and the large scale harm that could occur while operating a 14,000 ton train carrying hazardous material that caused CSXT's concern. The Plaintiff's own arguments reveal that the Defendant's perceptions were limited to the Plaintiff's ability to perform his particular job at CSXT. *See, e.g.,* DE 131 at 9 (arguing that Jackson's deposition "explicitly contains statements pertaining to Defendant's belief that Plaintiff has a mental impairment affecting his ability to perform his job at CSXT"). Although CSXT was unaware of the exact nature of the Plaintiff's condition, it only restricted him on the basis of a specific concern for safety that is implicated by those positions that are responsible for operating a train. Operation of a train is a particular, specialized job within the railroad industry, which is itself quite specialized. There is no evidence that CSXT perceived the Plaintiff as unable to perform an entire class of jobs or a broad range of jobs in various classes.

The Plaintiff argues that he was qualified to run a locomotive and did not have any safety incidents in the forty-five days before his removal. The Court must consider the implication of this argument: that CSXT mistakenly thought him unable to perform his job and, therefore, regarded him as having a substantially limiting impairment.

15

In *Krocka v. City of Chicago*, the court held that it was not evidence that the Chicago police department thought an officer diagnosed with severe depression was disabled under the ADA because it required him to undergo a medical evaluation and to continue to be supervised by a physician.

> We have stated that where inquiries into the psychiatric health of an employee are job related and reflect a "concern [ ] with the safety of . . . employees," the employer may, depending on the circumstances of the particular case, require specific medical information from the employee and may require that the employee undergo a physical examination designed to determine his ability to work.

203 F.3d 507, 515 (7th Cir. 2000) (alterations in *Krocka*) (citing *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1060 (7th Cir. 1998)). The court explained that the position of police officer presented significant safety concerns for other employees as well as for the public. *Id.* The court stated that it "was entirely reasonable, and even responsible for [the defendant] to evaluate [the plaintiff's] fitness for duty once it learned that he was experiencing difficulties with his mental health." *Id.* "The steps taken to reassure an employer that an employee is fit for duty where there is a legitimate concern about an employee's ability to perform a particular job are not proof in a case such as this one that the employer regarded the employee as disabled." *Id.*

CSXT places conductors and engineers in positions where they can do tremendous harm if they do not properly perform their duties and act irrationally—either because of an inability to determine if events and person were real or imagined—or otherwise. Leathers and Jackson had first hand interaction with the Plaintiff that caused them to question whether he should be operating a locomotive. CSXT was entitled to inquire into the Plaintiff's mental health because it had concerns, based on observed behavior, that the safety of employees and the public were

16

potentially be at risk. CSXT's perception that the Plaintiff's mental health adversely affected his ability to keep the public safe while operating a train was not tantamount to regarding him as unable to perform an entire class of jobs or a broad range of jobs in various classes. It remains to be seen what perceptions and conclusion CSXT would draw about the Plaintiff's abilities after receiving a fitness for duty examination because the Plaintiff has not followed the steps necessary for a valid exam.

The Plaintiff has not presented sufficient evidence to demonstrate a genuine issue of material fact as to whether CSXT regarded him as disabled. Because the ADA only prohibits discrimination against qualified individuals with disabilities, the Plaintiff's failure to establish that he is disabled make is unnecessary for the Court to discuss the Plaintiff's remaining assertions: (1) that he met his employer's legitimate job expectations; (2) that he was removed from service without objective medical evidence that he posed a safety risk; (3) that he was harassed through a conspiracy between his employer and the union; and (4) that he suffered an adverse employment action.[2] CSXT is entitled to judgment as a matter of law on the Plaintiff's claim that it violated the ADA.

### C.     State Law Claims

The Plaintiff has state law claims pending from a related lawsuit that was consolidated with this case on August 7, 2007. According to the supplemental jurisdiction statute, a district

---

[2] Much of the Plaintiff's submission establish that his major complaint is that neither Jackson nor Leathers were qualified to make medical determinations and thus, he was removed from service without objective medical evidence. He complains that Neilson could not rely on information from Jackson and Leathers because they are not licensed to dispense medical advise or make medical decisions. Jackson's and Leathers' purported deficiencies and wrongful acts also became the subject of two other lawsuits filed by the Plaintiff, which have since been consolidated with this case and dismissed.

court may decline to exercise supplemental jurisdiction over these claims if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "[T]he general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits." *Wright v. Associated Ins. Cos. Inc*., 29 F.3d 1244, 1251 (7th Cir. 1994).

The Court has granted the Defendant's motion for summary judgment and dismissed the ADA claim over which it had original jurisdiction. Accordingly, the Court relinquishes jurisdiction of the Plaintiff's state claims and dismisses them without prejudice.

**CONCLUSION**

For the foregoing reasons, the Defendant's Motion for Summary Judgment [DE 113] is GRANTED. The Plaintiff's Motion of New Found Evidence [DE 123], the Plaintiff's Motion to Reply [DE 129], and the Defendant's Motion to Strike Surrreply [DE 132] are RENDERED MOOT. The Defendant's Motion to Strike [DE 125] is DENIED because the Court construed the Plaintiff's February 6, 2007, "Motion for Summary Judgment" as a response to the Defendant's Motion for Summary Judgment. The Plaintiff's state law claims are dismissed without prejudice. The Clerk will enter judgement in favor of the Defendant and against the Plaintiff. This judgment also applies to the ADA-related claims raised by the Plaintiff in Cause No.: 1:06-CV-307, which was consolidated with this cause on August 7, 2007 [DE 157]. The Motion for Protective Order [DE 160], filed on August 21, 2007, is RENDERED MOOT.

SO ORDERED on August 30, 2007.

                                             s/ Theresa L. Springmann
                                            THERESA L. SPRINGMANN
                                            UNITED STATES DISTRICT COURT